UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— x

LUIS ALBERTO PIMENTEL GAUTIER,
a/k/a ALEXIS VEGA RODRIGUEZ

               Petitioner,

     - v. -

UNITED STATES OF AMERICA,

               Respondent.

—————————————————————————— x

21 CV 7198 (CM)
17 CR 483 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/10/21

### DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE HIS CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255

McMahon, J.:

On October 22, 2019, Luis Alberto Pimentel Gautier pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. On February 6, 2020, the Court sentenced Gautier to 78 months' imprisonment. He is currently serving his sentence at the Federal Correction Institution in Pollock, Louisiana—his projected release date is July 24, 2024.

On April 12, 2021, Gautier—through his attorney, John F. Cicilline, who has represented Gautier throughout these proceedings—filed a motion pursuant to 28 U.S.C. § 2255 asking that Gautier be resentenced. (ECF No. 67.) In his five-page memorandum, counsel "acknowledges that the issues he raises in this motion have been considered by the Court of Appeals for the Second Circuit and rejected." (ECF No. 67-1 at 1.) He asserts, however, that he "continues to maintain that important issues may have been inadequately argued" by him at sentencing, and he "believes that if properly set out, this court would impose a lesser sentence than the 78 months that was imposed here." (*Id.*)

1

*First*, counsel argues—as he did in advance of Gautier's original sentencing—that Gautier should receive credit for the seven months he spent detained during his USVI 'illegal reentry prosecution, prior to being transferred to this district. (*Id.* at 1-2.)

*Second*, counsel argues—as he did before—that Gautier should be granted a reduction in sentence based on the allegedly unconstitutional living conditions at MDC Brooklyn, where Gautier was previously housed. Counsel argues that this Court refused to consider such a reduction at sentencing because it misapprehended counsel's argument as addressing Gautier's confinement in the USVI, rather than MDC Brooklyn, and that if counsel's "argument had been more precise the court would have considered a variance." (*Id.* at 2.)

*Third*, counsel argues—as he did before—that the Court should consider the fact that Gautier's Criminal History Category rose from Category I to Category II because of his USVI illegal reentry conviction, which was purportedly driven by Gautier's attempt to donate a kidney to his dying mother. (*Id.*) Counsel argues that "[t]he court did not specifically address this issue because counsel had not effectively argued the point." (*Id.*)

*Fourth*, counsel argues that in connection with sentencing, the defense submitted "17 letters which established [Gautier's] substantial rehabilitation"—including, his employment history—but that the Court apparently did not review or consider these letters. (*Id.* at 3.) Counsel argues that "had the court been aware of [them], its sentence would have been different." (*Id.*)

*Fifth*, counsel argues—again, as he did before—that Gautier should have received a sentence akin to the 36 months' imprisonment received by Hernandez. (*Id.* at 3-4.) Counsel argues

that the Court rejected this argument because it "did not have a more substantial argument from counsel on this point . . . [and] was left with the impression that the defendant may have continued with a life of drug dealing, even though the letters and memorandum suggested otherwise." (*Id.* at 4.)

The Government urges the Court to dismiss the Petition on the grounds that (1) Gautier knowingly and voluntarily waived his right to collaterally attack his sentence in his plea agreement with the Government, and (2) to the extent that the Petition is to be construed as a claim of ineffective assistance of counsel, outside the scope of the collateral-attack waiver, it fails to meet the rigorous standard for such claims set forth in *Strickland*. (Government Memo. ECF Doc. 73.)

## I.     **Gautier Waived His Right to Collaterally Attack His Sentence**

In the Plea Agreement, Gautier expressly agreed not to "bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 . . . of any sentence within or below the Stipulated Guidelines Range of 78 to 97 months' imprisonment." (Plea Agreement at 4.) Such waivers are presumptively enforceable, and the circumstances under which a court will decline to enforce a collateral-attack waiver are very limited. *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) ("A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable . . . [and the] 'exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence.'" (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000))). As the Second Circuit has explained, such exceptions include situations "when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on

3

constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence." *Gomez-Perez*, 215 F.3d at 319 (internal citations omitted).

Gautier does not suggest, and the record does not support, that the collateral-attack waiver contained in the Plea Agreement is unenforceable for any of the reasons listed above. During his plea proceeding, Gautier affirmed that prior to signing the Plea Agreement, he discussed it with his attorney and understood its contents. (Plea Tr. at 18-22.) Gautier confirmed his understanding that the Plea Agreement contained a Stipulated Guidelines Range of 78 to 97 months' imprisonment, and that by pleading guilty, he was "giving up [his] right to challenge [a sentence of 97 months' or less] by appeal to the Court of Appeals or by any further application to this Court." (*Id.* at 18-20.) And Gautier affirmed that his plea was "voluntary and made of [his] own free will." (*Id.* at 22.) Thus, Gautier's waiver was knowing and voluntary. Even now, Gautier does not claim to have misunderstood the terms of the Plea Agreement, nor does he argue that this case fits within any of the other exceptions to the enforcement of collateral-attack waivers.

Because this Court imposed a sentence of 78 months' imprisonment, within the range Gautier agreed not to challenge, Gautier's Petition is barred by the Plea Agreement's collateral-attack waiver.

The petition is dismissed as barred by his plea agreement with the Government.

## II.     **Gautier Has Not Established a Valid Claim of Ineffective Assistance of Counsel**

Even if the Court were to construe Gautier's Petition as asserting claims of ineffective assistance of counsel, outside the scope of the collateral-attack waiver, it would fail to meet the heavy burden for such claims.

### A.     **Legal Standard**

To evaluate a claim of ineffective assistance of counsel, courts use the framework

established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a petitioner must first show that his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 687-88. He must also "affirmatively prove prejudice." *Id.* at 693. Only if both of these elements are satisfied can the petitioner demonstrate that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Under the first prong of the *Strickland* test, courts apply a "strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission ofcounsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (internal quotation marks omitted). "[T]here are countless ways to provide effective assistance in any given case," and the "central concern" of the *Strickland* inquiry "is not with grading counsel's performance," but instead with ensuring that there has been no "breakdown in the adversarial process." *United States v. Aguirre*, 912 F.2d 555, 560-61 (2d Cir. 1990) (internal quotation marks and citations omitted).

Under the second prong of *Strickland*, a defendant must meet the heavy burden of affirmatively proving prejudice. To do so, the defendant "must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding,'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693), as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693. Furthermore, when considering the two prongs of *Strickland*, the Supreme Court has explained that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

5

followed." *Id.* at 697.

Finally, the filing of a Section 2255 petition does not, by itself, obligate the district court to conduct an evidentiary proceeding. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) ("The motion does not entitle petitioner automatically to a hearing."). On the contrary, a district court may dismiss a Section 2255 petition without a hearing where the defendant fails to raise "detailed and controverted issues of fact." *Id.* Similarly, where the existing record "conclusively show[s] that the [petitioner] is entitled to no relief," summary dismissal without a hearing may be appropriate. *Id.* (quoting *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974)); *see also* 28 U.S.C. § 2255(b) (stating that the Court shall grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

### B. Discussion

Each of Gautier's arguments—raised here by the very same counsel who has represented Gautier throughout these proceedings—fails under the *Strickland*, as there is no basis in the record to conclude that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," or that any alleged errors caused actual prejudice.

*First*, with respect to counsel's argument that defendant should have received credit toward his present prison sentence for the time he spent detained during the USVI proceedings: Counsel presented this same argument to the Court, in detail, in his written sentencing submission prior to sentencing. (ECF No. 59 at 1-7.) Moreover, the Court expressly considered, but rejected, this argument during the sentencing hearing itself. (Sentencing Tr. at 16-17, 19.) Accordingly, there is no basis to conclude that counsel acted ineffectively in connection with this argument, or that any alleged error was prejudicial.

*Second*, with respect to counsel's argument regarding the conditions at MDC Brooklyn:

It is true that the Court construed defense counsel's arguments at the **sentencing proceeding**, as

pertaining to the conditions of confinement in the USVI (*Id.* at 12-13); however, counsel

presented his "MDC is not the Waldorf " argument at length in his written sentencing

submission:

> MDC, Brooklyn does not feature the amenities that one would find at the Waldorf
> Astoria, and the people who have reservations at MDC seem to understand that.
> But the law requires that the innkeeper at MDC maintain a modicum of good
> housekeeping. *See Rhodes v Chapman,* 452 US 337 (1981). *Walker v Schult,* 717
> F3d 119 (2d Cir 2013); *Phelps v Kapnolas,* 398 F3d 114 (2d Cir 2002) (per
> curiam). That standard would preclude the presence of vermin, roaches and the
> absence of heat, all of which conditions have been documented as being present
> by the Justice Department Office of the Inspector General.
>
> As a result, a civil action was brought against the Warden in *Scott v Quay*. The
> suit alleged that the warden failed to protect against the unreasonable risk of
> serious damage to his health and that as a result inmates had suffered the loss of
> the assistance of counsel in  preparation for their defense, apart from being
> exposed to unsafe and unsanitary living conditions. The court in *Wilson v Seiter,*
> 501 US 294 (1991) specifically held that "low cell temperatures at night
> combined with a failure to issue blankets may establish an Eighth Amendment
> violation." id 125 Moreover, the circuit has recognized that unsanitary conditions
> in a prison can rise to the level of cruel and unusual punishment. citing *LaReau v
> MacDougall* 473 F2d 974 (2d Cir 1972); *Gaston v Coughlin,* 249 F3d 156 (2d Cir
> 2001).
>
> Under USSG 5K 2.0 of the guidelines, a district court may depart from the range
> prescribed under the guideline if there exists an aggravating or mitigating
> circumstance of a kind or to a degree, not adequately taken into consideration by
> the Sentencing Commission in formulating the guideline that should result in a
> sentence different from that described. *United States v Brady,* 447 F3d 326 (2d
> Cir 2005). The authority for this kind of variance is also found  in USSG Manuel
> Ch 1 pt A, introductory cmt. 4 (b), when a circumstance falls outside of the
> heartland of the typical case encompassed by each guideline. *Brady,* at 333.
>
> Because the, conditions of the defendant's confinement do not meet constitutional
> standards and because the guidelines allow for a variance in an area not
> considered by the Sentencing Commission this defendant should receive some
> allowance for his imprisonment in an atmosphere that violates the Eighth
> Amendment.

(ECF No. 59 at 7-9). The Court considered this argument along with all of defendant's

other arguments—whether made as part of his written submission or orally at

sentencing—in formulating defendant's sentence. That counsel did not repeat this argument in his oral presentation had zero impact on defendant's ultimate sentence.

*Third*, with respect to counsel's claim that he did not make effective oral arguments at sentencing regarding the defendant's Criminal History Category (namely, that the defendant's Criminal History Category rose from Category I to Category II as a result of his illegal reentry conviction,  a reentry counsel argued was motivated by his clients desire to donate a kidney to his mother), there was, once again, no prejudice to defendant, because counsel argued this point in his written sentencing memorandum.   There was no need for counsel to argue this point further at the sentencing proceeding, because the Court acknowledged during colloquy with the parties that it was aware that the illegal reentry conviction was the predicate for defendant being in CHC II (Sentencing Tr. at 15), and that defendant claimed the only reason he reentered was to donate a kidney to his mother. (*Id.* at 17.) Accordingly, the record does not support that counsel failed to put this argument before the Court, or that counsel's failure to push the issue further resulted in any actual prejudice to the defendant.

*Fourth*, with respect to counsel's argument regarding the defendant's evidence of rehabilitation: It is true that during the sentencing hearing, the Court and the Government stated that they were aware of no evidence concerning the legitimate employment of the defendant during the period between the defendant's prior convictions and the instant offense conduct. (*Id.* at 16.) In the Petition, counsel argues that these statements by the Court and the Government were contradicted by 17 letters of support that he submitted prior to sentencing, and he argues that had the Court been aware of those letters at the time, its sentence would have been different. (ECF No. 67-1 at 3.)

As an initial matter, it is worth noting that defense counsel made no attempt to correct the record during the hearing itself, when the Court and the Government made the statements

referenced above (Sentencing Tr. at 16), nor did defense counsel interject when the Court listed, at the outset of the hearing, the written materials it had received, which did not include the referenced letters.[1] (*Id.* at 3.)

That said, defense counsel does not argue in the Petition that he failed to submit the 17 letters in advance of sentencing. In fact, he argues just the opposite, asserting that he delivered the letters to Probation and the Government "well in advance of sentencing." (ECF No. 67-1 at 3.)

Even if defense counsel did fail to submit the letters, counsel has not established that this error resulted in actual prejudice to the defendant. First, defense counsel raised these same arguments regarding employment and rehabilitation—and referenced the letters regarding the same—in his written sentencing submission. (ECF No. 59 at 13-15.) As a result, whether or not the letters themselves were before the Court, the arguments predicated on them were.

Second, a review of the letters in question—which were attached to the defendant's appellate briefing and are attached to the Government's Opposition as Exhibit C in this case (ECF Document 73-3)—reveals only a single one-page letter regarding employment history— from an auto business in the Dominican Republic—which states simply that the defendant was employed as a "sale agent" from 2002 to 2014 and from 2016 to 2018. *Id.* Had the Court received the letter in question, it would have carried no weight with me. The Probation Department stated in the Presentence Investigation Report that it was "unable to verify" the defendant's employment history (PSR ¶ 88), and the claimed employment proves nothing about defendant's purported rehabilitation since he was convicted in this case of drug dealing "from at

---

[1] The Court searched the official court file and chambers file for the 17 letters in question and found no such letters. And the Government represents that "although the Assistant United States Attorneys who handled this prosecution have since left this Office, the Assistant United States Attorney who appeared for sentencing found no record of the referenced 17 letters in her files. To this day, the Government is not aware of defense counsel having filed the letters on the docket in this matter." (Govt. Memo at 18.)

least January 2016 through at least May 24, 2016"—during the same period he says he was lawfully employed selling cars. Accordingly, defendant was not prejudiced from the Court not having seen the letter because it would not have altered the sentenced the Court ultimately imposed.

*Fifth*, with respect to counsel's argument regarding the unreasonableness of the defendant's sentence relative to Hernandez's: This argument, like the others, was raised by defense counsel prior to sentencing, both in his written submission (ECF No. 59 at 14-15) and during the hearing itself. (Sentencing Tr. at 9-11.) And, as above, the Court specifically addressed this argument, stating that it did not consider the defendant "to be particularly comparable to Mr. Hernandez," given the defendant's greater role in the underlying offense and prior criminal record. (*Id.* at 10, 15-16, 19.) Whether or not defense counsel could have made a "more substantial argument" regarding the defendant's life following his earlier convictions (ECF No. 67-1 at 4), the fundamental differences between Gautier and Hernandez cited by the Court would have remained, and this argument would have failed.

In sum, counsel makes essentially the same arguments in the present motion as he made at the time of sentencing and on appeal. To the extent that he now believes that he could have articulated the arguments better, or pressed them harder, does not rise to the level of constitutionally deficient assistance of counsel under *Strickland.*

**III.  Conclusion**

Gautier's motion to set aside his conviction and sentence is DENIED—there is no need for a hearing in this case because the existing record conclusively shows that Gautier is not entitled to the requested relief.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). Further, the Court finds, pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from an order denying Gautier's motion would not be taken in good faith. *See Feliz v. United States*, No. 01-cv-5544, 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002).

This constitutes the decision and order of the court.

Dated:  November 10, 2021

Colleen McMahon
United States District Court Judge

BY ECF TO ALL PARTIES

11